ORDERED.

**Dated:  April 12, 2018**

Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| JOHN K. RAND, | ) | Case No. 6:16-bk-05323-KSJ |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| INTERNATIONAL SPEEDWAY | ) | |
| CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 6:17-ap-00009-KSJ |
| | ) | |
| JOHN K. RAND, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION DENYING THE DEBTOR'S DISCHARGE

Plaintiff, International Speedway Corporation, objects to the Debtor/Defendant's discharge under § 727 of the Bankruptcy Code[1] because he kept no meaningful financial records, failed to explain his loss of assets, and made a false oath or account on his bankruptcy petition. Debtor

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et. seq.* Plaintiff brought other counts under §§ 523 and 541 of the Bankruptcy Code, but the Court need not rule on those counts because the Debtor is denied his discharge under § 727. Doc. No. 1.

denies these allegations claiming he spent all his money on living expenses and paid all his bills in cash because he opposed the banking system. After a full day trial considering the Debtor's testimony and admitted evidence, the Court will deny the Debtor's discharge.[2]

Before this bankruptcy was filed in 2016,[3] the Debtor was a successful insurance salesman and owned a business that sold insurance for many years.[4] Plaintiff leased office space to the Debtor for his business;[5] there was a default on the lease; the Plaintiff sued the Debtor in Volusia County. The Florida state court entered a final default judgment of approximately $219,000 in the Plaintiff's favor.[6] This judgment is listed on the Debtor's Schedule E/F and is a large majority of the Debtor's listed unsecured debt (about 83%).[7]

Although the testimony was unclear on the exact date, the Debtor "closed" his insurance business around the same time he defaulted on the lease.[8] Debtor earned substantial income after closing his own business; he earned $300,000 a year at his last salaried job that terminated about a year pre-petition.[9]

But, after the Plaintiff got the sizeable judgment against the Debtor, he left a traditional employment situation and worked at several independent contract jobs with various insurance agencies and other companies shortly before he filed this bankruptcy case.[10] He initially stated he

---

[2] The trial was held on March 1, 2018.

[3] Doc. No. 1 in Main Case 6:16-bk-05323-KSJ, filed August 11, 2016 (the "Petition"). Doc. No. 64 is the joint stipulation of undisputed facts, which will be cited at "Stipulation, ¶ __."

[4] Testimony of J. Rand 13-16. Petition, p. 26 (listing the Debtor's occupation as "insurance sales" and stating that his employment has been insurance sales for 30 years), Petition, p. 37 (listing Rand Sports and Entertainment Insurance as a business that existed from 1998-2012). Stipulation, ¶ 11.

[5] Testimony of J. Rand 16-25; Plaintiff's Exh. 12. The lease started in 2011.

[6] Plaintiff's Exh. 12. The final default judgment was entered on May 12, 2015, in the Circuit Court for the Seventh Judicial Circuit in and for Volusia County, Florida, Case No. 2014-31543-CICI. Stipulation, ¶ 6.

[7] Petition, p. 22. Stipulation, ¶ 11.

[8] Testimony of J. Rand 17:18-22. Debtor testified during a deposition that the business closed four years prior to 2016 but later stated it was likely 2011. Plaintiff's Exh. 21, pp. 17, 29.

[9] Testimony of J. Rand 13:21-25. Plaintiff's Exh. 21, p. 68. Two years before that, the Debtor made approximately $150,000 a year, then $125,000 a year working for Insurance Office of America. Plaintiff's Exh. 21, pp. 68-69.

[10] Testimony of J. Rand 30-33. One of these jobs was health and wellness consulting with "Arbonne," a multilevel marketing company. See also Plaintiff's Exh. 21, p. 44 (describing the insurance agencies the Debtor worked for on an independent basis).

made about $2,000 from these independent jobs, but during the trial, the Debtor testified that it may have been more than that.[11] The Court finds the Debtor's testimony ambiguous and untruthful. It is not credible that the Debtor's earning decreased from $300,000 a year to earn only $2,000 a year. On his petition, he listed $1,669 in gross income in the year 2016, earning about $238 per month.[12] In the year before that, the Debtor listed that he received about $265,000 in gross income.[13] Debtor, who excels at selling insurance, surely earned substantially more than $2,000 in 2016, although the exact amount is not discernable due to the Debtor's failure to keep financial records.

Shortly before filing bankruptcy, Debtor also switched from keeping normal financial records and using checks and banks to operating exclusively on a cash basis. He operated in cash from at least October 2015 until his bankruptcy was filed.[14] He paid rent and all his bills in cash. He lives in a house owned by his mother's trust.[15] His mother accepts rent in cash randomly and in varying amounts.[16] There are no receipts for these inter-family transactions.[17] Each time rent was paid, if it was, the Debtor traveled up to Massachusetts to allegedly pay his mother.[18] Debtor testified he is not currently paying any rent,[19] yet he listed he pays $1,000 every month in rent expenses on his schedule J.[20]

---

[11] Testimony of J. Rand 79:10-16. Plaintiff's Exh. 9 shows a "shout out" from Arbonne the Debtor for the Debtor achieving a certain sales level through his work with them. Debtor testified he received a bonus of around $1,500 for this achievement. *See also* Plaintiff's Exh. 21, p. 42 (describing Debtor's work for Arbonne).
[12] Petition, pp. 31, 40.
[13] Petition, p. 32.
[14] Testimony of J. Rand 65:16-24.
[15] Testimony of J. Rand 34-35. Stipulation, ¶¶ 13-16.
[16] Testimony of J. Rand 36-37. Plaintiff's Exh. 21, p. 61.
[17] Testimony of J. Rand 37:11-15. Stipulation, ¶¶ 17-18.
[18] Testimony of J. Rand 39:25-40. Stipulation, ¶ 19.
[19] Testimony of J. Rand 39:2-21.
[20] Petition, p. 28.

There are no books or records of the Debtor's household expenses pre-petition,[21] and he maintained no active bank account.[22] According to the Debtor, he was "using cash exclusively."[23] He would cash his paychecks rather than deposit them in a bank account, even borrowing a car to travel from Ormond Beach to Orlando to cash the checks.[24] Debtor paid cash for his power bill,[25] cell phone bill,[26] water and trash bill,[27] and property taxes.[28] Although he could not estimate at trial the average amount of these bills,[29] the Debtor listed specific amounts on his Schedule J.[30] There is a $500 support payment in his Schedule J, but the Debtor stated that he had not made that payment for several years.[31] The Court concludes the Debtor falsified the expenses in his Schedule J. He did not pay monthly rent ($1,000) or the support payment of $500.

Debtor says he operated exclusively in cash after another creditor garnished his bank account, and he wanted to avoid another garnishment.[32] He did not like participating in the banking system and felt vulnerable with an open bank account.[33] The testimony was that he had about $100,000 in cash about a year before his bankruptcy was filed that he used for living expenses, although the Debtor was not certain when he received the cash.[34] He says this cash is exhausted but has no financial record to support this conclusion.[35] In his schedules, the Debtor listed $1,000

---

[21] Testimony of J. Rand 41:13-15.
[22] Testimony of J. Rand 43:9-11, 49:2-24.
[23] Testimony of J. Rand 50:4. Stipulation, ¶ 19 ("[Debtor] maintains all his assets in cash").
[24] Testimony of J. Rand 50-51, 54:7-9. Plaintiff's Exh. 21, p. 66 (The Debtor described how he cashed his paychecks at the banks that the checks came from and recalls driving to South Florida to cash a check too.).
[25] Testimony of J. Rand 57:10-14.
[26] Testimony of J. Rand 57:25-58:1-6.
[27] Testimony of J. Rand 58:16-23.
[28] Testimony of J. Rand 74.
[29] Testimony of J. Rand 72-73.
[30] Petition, p. 29.
[31] Plaintiff's Exh. 21, p. 53:3-13. Plaintiff's Exh. 7 is a Joint Stipulation for Entry of Judgment between the Debtor and his ex-wife that found $23,500 in past-due alimony was due to the Debtor's ex-wife.
[32] Testimony of J. Rand 59:8-22, 61:18-20. Plaintiff's Exh. 21, p. 64.
[33] Testimony of J. Rand 63:12-24.
[34] Testimony of J. Rand 66:2-17, 69.
[35] Testimony of J. Rand 66:19-25.

in cash on hand and $4,000 in other personal property.[36] Without financial records, the Court and creditors can only guess as to the Debtor's cash on the petition date.

Immediately after filing bankruptcy, Debtor reverted to using a checking account and debit card post-petition contending it now was more "convenient."[37] Debtor received $150,000 post-petition from a wealthy friend.  He says he used these monies to pay living expenses and fund extravagant vacations.[38] So, after filing bankruptcy, the creditors can track his income and expenses; but pre-bankruptcy, creditors are in the dark on the Debtor's income, expenses, and assets.

The primary purpose of a Chapter 7 consumer bankruptcy case is to reward an honest debtor with a fresh start from all debts—a discharge.[39] Courts construe objections to discharge liberally for the debtor and strictly against the objecting party.[40] However, only those debtors who fully disclose their assets may receive a discharge.[41] Early and complete disclosure by the honest debtor avoids extraordinary and unjustified work by Chapter 7 Trustees and creditors, who should not spend time recreating what "may" have happened to a debtor's assets.[42]

When a party objects to a debtor's discharge, the initial burden is on that party to prove the objection by a preponderance of the evidence.[43] Once met, the burden shifts to the debtor to rebut the allegations.[44] The Court focused on three of the Plaintiff's arguments: Debtor is precluded from discharging his debts because he failed to produce or to keep adequate financial records to allow his creditors to ascertain his true financial condition (§ 727(a)(3)), he knowingly or fraudulently

---

[36] Petition, pp. 10-12.
[37] Testimony of J. Rand 95.
[38] Testimony of J. Rand 84-85, 88-89.
[39] *Perez v. Campbell*, 402 U.S. 637, 660, 91 S. Ct. 1704, 1716, 29 L. Ed. 2d 233 (1971).
[40] *Coady v. D.A.N. Joint Venture III, L.P. (In re Coady)*, 588 F.3d 1312, 1315 (11th Cir. 2009); *Reynolds v. Trafford (In re Trafford)*, 377 B.R. 387, 392 (Bankr. M.D. Fla. 2007).
[41] *In re Coady*, 588 F.3d at 1315 (citing *Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1338-39 (11th Cir. 2008)).
[42] *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239, 1244 (11th Cir. 2008).
[43] Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654, 659-60, 112 L. Ed. 2d 755 (1991).
[44] *Id.*

made a false oath or account (§ 727(a)(4)(A)), and he failed to satisfactorily explain his loss of assets (§ 727(a)(5)).

Section 727(a)(3) provides a debtor should not receive a discharge if he or she fails to maintain adequate books and records from which the debtor's true financial condition can be ascertained.[45] The purpose of § 727(a)(3) is to give creditors, the trustee, and the bankruptcy court, "complete and accurate information regarding the status of a debtor's affairs and to test the completeness of the [debtor's] disclosure."[46] Giving truthful and complete financial books and records to the Chapter 7 Trustee is mandatory. Every trustee needs the information to administer the bankruptcy case, and this is a condition precedent to receiving a discharge.[47] Courts have wide discretion in determining whether a debtor has maintained sufficient records.[48] Each case should be determined on its own facts,[49] and there should be *some* orderly records from which a debtor's financial condition can be deduced.[50]

Courts generally must decide whether the books and records produced by a debtor "are adequate to permit the court and creditors to trace the debtor's financial dealings."[51] "While perfect record keeping is not required, the creditors examining the debtor's records 'must be reasonably able to follow the debtor's business transactions, make intelligent inquiry, verify the oral

---

[45] Section 727(a)(3) of the Bankruptcy Code provides:
   (a) The court shall grant the debtor a discharge, unless--. . .
   (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

[46] *Sackett v. Shahid (In re Shahid)*, 334 B.R. 698, 706 (Bankr. N.D. Fla. 2005) (citing *Grant v. Sadler (In re Sadler)*, 282 B.R. 254, 263 (Bankr. M.D. Fla. 2002)).

[47] *In re Shahid*, 334 B.R. at 706-07 (internal citations omitted).

[48] *Id.* at 707 (internal citations omitted).

[49] *Forbes v. Moore (In re Moore)*, 559 B.R. 243, 254 (Bankr. M.D. Fla. 2016).

[50] *Id.*

[51] *In re Shahid*, 334 B.R. at 707 (internal citations and quotation marks omitted).

statements and explanations of the bankrupt, and ascertain the present and past financial condition of the bankrupt [with] substantial completeness and accuracy.'"[52]

Section 727(a)(4)(A) provides that a debtor shall not receive a discharge where he "knowingly and fraudulently, in or in connection with the case, makes a false oath."[53] The false oath must be both fraudulent and material.[54] A false oath is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of his property."[55] An omission from a debtor's schedules or statement of financial affairs, for example, can constitute a false oath under § 727(a)(4).[56] After a plaintiff's initial burden is met, the burden shifts to the debtor to prove he did not knowingly and fraudulently make a material false oath.[57]

Section 727(a)(5)[58] precludes a debtor's discharge where the debtor fails to explain a loss of assets.[59] A plaintiff has the preliminary burden of demonstrating that the debtor "formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors."[60] Upon such a showing, debtors then must supply a satisfactory reason they no longer have the asset.[61] "A

---

[52] *Id.* (internal citation and quotation marks omitted).

[53] 11 U.S.C. § 727(a)(4)(A).

[54] *Swicegood v. Ginn,* 924 F.2d 230, 232 (11th Cir. 1991).

[55] *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619 (11th Cir. 1984).

[56] *In re Whitehill,* 514 B.R. 687, 692 (Bankr. M.D. Fla. 2014).

[57] *Pellegrino, et al. v. Metro Unlimited and Dakhllahlah (In re Dakhllalah),* Adversary No. 6:09-ap-739–KSJ, 2010 WL 148457 at *3 (Bankr. M.D. Fla. Jan. 7, 2010).

[58] Section 727(a)(5) provides:
    (a)  The court shall grant the debtor a discharge, unless-- . . .
           (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

[59] *Hawley v. Cement Indus. (In re Hawley),* 51 F.3d 246, 249 (11th Cir. 1995).

[60] *Turner v. Tran (In re Tran),* 297 B.R. 817, 836 (Bankr. N.D. Fla. 2003) (citing *First Commercial Fin. Group v. Hermanson (In re Hermanson),* 273 B.R. 538, 545 (Bankr. N.D. Ill. 2002) (citing *Banner Oil Co. v. Bryson (In re Bryson),* 187 B.R. 939, 955 (Bankr. N.D. Ill. 1995))).

[61] *Id.*

[debtor's] general oral explanation for the disappearance of substantial assets without documentary corroboration" is not enough.[62] Vague and indefinite explanations of losses are not sufficient.[63]

The Court attempted to parse through and piece together the Debtor's timeline of his employment history, his decision to operate in cash exclusively, and where his cash on hand went pre-petition. Credibility is often the key in determining the sufficiency of a debtor's explanation for lost assets and failing to keep any meaningful financial records. Here, the Court specifically finds that the Debtor's testimony was not credible. Debtor gave conflicting testimony and his timelines were often changed when pressed. Plaintiff provided enough evidence to draw a contrary conclusion to the Debtor's representations.[64]

Plaintiff carried its burden by a preponderance of the evidence to show that the Debtor failed to maintain books and records so his creditors could ascertain his financial condition, misreported his income and expenses on his bankruptcy schedules, and failed to explain his loss of identifiable and substantial cash.[65] Debtor need not keep perfect financial records of what he spent his money on, but there is no credible record of where his money went, aside from the Debtor's waffling testimony.[66] Creditors could not ascertain his true financial condition given the

---

[62] *In re Tran*, 297 B.R. at 836 (citing *In re Hermanson*, 273 B.R. at 549).

[63] *In re Chalik*, 748 F.2d at 616.

[64] *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512, 104 S. Ct. 1949, 1966, 80 L. Ed. 2d 502 (1984) ("When the testimony of a witness is not believed, the trier of fact may simply disregard it. Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion.")

[65] 11 U.S.C. § 727(a)(3), (4), and (5).

[66] *Law offices of Dominic J. Salfi, P.A. v. Prevatt (In re Prevatt)*, 261 B.R. 54 (Bankr. M.D. Fla. 2000) ("Because the Defendant failed to bring forward any records to support his specious explanations, the Court is empowered to find that such records were never kept. The Court is further entitled to conclude that such records were never kept because Defendant did not want the Trustee or Plaintiff to discover their contents, or that such records were not kept because the Defendant's explanation is completely fictional."); *See also Hughes v. Neary*, 386 B.R. 624, 630 (N.D. Tex. 2008), *aff'd sub nom. In re Hughes*, 309 Fed. App'x 841 (5th Cir. 2009) ("In so stating, the bankruptcy court did not require [the Debtor] to document his earnings or expenditures with precision. It merely noted that there were no records with which a determination of just how much money passed through [the Debtor's] hands prior to the filing of his bankruptcy petition. … The statute imposes a duty on Hughes to justify, not merely explain, his failure to maintain adequate records. Therefore, the bankruptcy court did not clearly err in finding that, under all of the circumstances of the case, Hughes provided insufficient justification for his failure to maintain adequate records.").

Debtor's failure.[67] There was no way for creditors to intelligently inquire into the Debtor's financial condition.

Similarly, there was no way for creditors to confirm his statements because there was no record to back up his story. Debtor's general explanation he spent his $100,000 in cash savings on "living expenses" in a year is incredible,[68] and there is no documentary corroboration to back up the Debtor's statements.

Debtor made a false oath by stating he paid certain expenses on his bankruptcy schedules and then testifying he did not pay those expenses (the Court disregarded the Debtor's testimony on his rent payments).[69] Debtor also gave a false oath in listing his total income of $1,669 in 2016.[70] The Court finds this false. The burden then shifted to the Debtor to explain what happened.

Debtor did not explain his failure to maintain accurate records of his financial history.[71] Debtor may have wanted to avoid garnishment of his bank accounts,[72] but then he may not come to the bankruptcy court and expect to discharge his debts. Debtor's explanation he "did not like" the banking system also did not hold weight with the Court. The Court finds it suspect that the Debtor operated in cash because of some moral opposition to banking, when immediately after

---

[67] *In re Moore*, 559 B.R. at 254 ("This recordkeeping requirement does not mandate a full accounting of every business transaction, but there should be some orderly records from which the debtor's present and past financial condition can be ascertained with substantial completeness and accuracy.").

[68] Testimony of J. Rand 66, 69.

[69] *In re Whitehill*, 514 B.R. at 692 ("Quite obviously, [727(a)(4)] relies on the debtor actually reviewing and then swearing to the accuracy of his schedules.").

[70] Petition, pp. 31, 40.

[71] *See Kistler v. Fader (In re Fader)*, 414 B.R. 640, 646 (Bankr. N.D. Cal. 2009) ("What this case boils down to, then, is whether the court accepts [the Debtor's] explanation that he expended over $200,000 drawn from ATM's or cashed from his and UP bank accounts and expended that amount while engaged in his business over a long period of time and while he traveled cross-country frequently, paying for meals, taxis, hotels and other similar expenses. The court does accept that explanation, not because it condones the practice but because it is credible and has not been rebutted. In this day and age it is hard to imagine why many of those expenses would not have been handled by credit cards, and certainly one who deals in cash transactions may draw an inquisitive look. But that is not the point; the critical inquiry is whether [the Debtor] has explained satisfactorily the apparent absence of cash (section 727(a)(5)) and justified the lack of records (section 727(a)(3)). He has.") As the California Bankruptcy Court highlights, credibility is often the critical determination on a 727 count.

[72] Testimony of J. Rand 59:8-22, 61:18-20. Plaintiff's Exh. 21, p. 64.

filing bankruptcy, he opened a checking account and uses a debit card post-petition for "convenience."[73]

The Court suspects the Debtor had more cash on hand than he disclosed, especially given in the Debtor's last permanent job he earned a salary of $300,000.[74] And, he is getting substantial unaccounted monies from friends and acquaintances.[75] The Court finds the Debtor did not accurately report his expenses on his bankruptcy schedules—he did not pay his mother rent consistently to justify including a $1,000 expense and he did not pay his $500 support payment even though he included that as an expense.[76] Again, the Court found the Debtor's testimony he made $1,669 in 2016 false. Although these figures may seem minimal, taken with all the other inconsistencies and incredible explanations, the Court finds the misstatements fraudulent and material. Debtor did not have a mortgage, did not pay rent (at least consistently), had no car payment, and had no other major expenses that would justify exhausting $100,000 in the year before his petition was filed when he owed his creditors money.

Discharges are reserved for honest but unfortunate debtors. Debtor is not honest or unfortunate, and his discharge is denied. The oral ruling scheduled for April 17, 2018, is cancelled. A separate final judgment consistent with this memorandum opinion will be entered simultaneously.

### 

Attorney, William Wolshifer, is directed to serve a copy of this memorandum opinion on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

---

[73] Testimony of J. Rand 95.
[74] Testimony of J. Rand 13:21-25. Plaintiff's Exh. 21, pp. 68-69.
[75] Testimony of J. Rand 13:21-25, 84-85, 88-89. Plaintiff's Exh. 21, pp. 68-69.
[76] Plaintiff's Exh. 21, p. 53:3-13; Stipulation, ¶¶ 13-19.